UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6186-CR-FERGUSON

UNITED STATES OF AMERICA, :

    Plaintiff, :

    v. :

KATHLEEN SZABO, :

    Defendant. :

_____:

## DEFENDANT'S REQUEST FOR ROLE REDUCTION AND REQUEST FOR DOWNWARD DEPARTURE

Defendant, Kathleen Szabo, through counsel, respectfully moves for a downward adjustment for role in the offense. Defendant further moves for a downward departure based on the fact that she suffers from a significantly diminished mental capacity. In support of this motion, Defendant states as follows:

### I.   ROLE IN THE OFFENSE.

As reflected in the PSI, Kathleen Szabo came to Ft. Lauderdale on June 19 of this year with a little less than one kilogram of cocaine concealed on her body. The cocaine had been given to her by men she knew as Ripton Reid and "Phil" in Jamaica. (PSI at 5). Ms. Szabo initially resisted, but was pressured into going through with the plan. (PSI at 5). She was instructed to travel to Fort Lauderdale. Ms. Szabo did not know what was going to happen next – presumably she would have been met at the airport by Reid or someone acting on his behalf, who would have taken the cocaine from Ms. Szabo and compensated her for her role as a reluctant courier. (PSI at 5). When she was



arrested, Ms. Szabo confessed to having brought the cocaine into the country and identified the men who had pressured her into doing this as best she could. (PSI at 5). Defendant respectfully suggests that these facts support a reduction of four, three or two levels for role in the offense.

§ 3B1.2 of the Sentencing Guideline reads, in pertinent part, as follows:

(a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b)  If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2.

Ms. Szabo played a minimal role in this offense. At most, she was a mule or courier used by others to assist in the importation of a relatively small amount of cocaine. See U.S.S.G. § 3B1.2 application note 2. Although not an excuse for her conduct, this does provide a basis for this Court to designate Ms. Szabo as a "minimal participant" and reduce her offense level accordingly.

The commentary to U.S.S.G. § 3B1.2, explains that the "minimal participant" provision "is intended to cover defendants who are plainly among the least culpable of those in the conduct of a group. . . .. It would be appropriate, for example, . . . in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.1 & 2). While courier status alone does not compel a finding that the defendant was a minor or minimal participant, United States v. Veloza, 83 F.3d 380, 382 (11th Cir. 1996), such a finding is certainly permissible. "[T]he fact that a courier plays an essential role in an importation scheme does not alone necessarily preclude her from receiving a reduction for a minor role . . .. Indeed, the guidelines provide as much." Id.

The fundamental holding of Veloza was reiterated in United States v. De Varon, (175 F.3d 930 (11th Cir. 1999) (*en banc*). "Simply put," the Court explained, "the drug courier may or may not qualify for a minor role reduction." Id. at 942. The decision rests with the discretion of the sentencing court, and appellate courts will accord "deference to the district court's discretion in this uniquely fact-intensive inquiry." Id. at 940. Accordingly, a sentencing court's determination will be disturbed on appeal only where there is clear error. Id. at 938.

De Varon directs a sentencing court considering a mitigating role adjustment to look to two principles: "first, the defendant's role in the relevant conduct for which she has been held accountable at sentencing, and, second, her role as compared to that of other participants in her relevant conduct." Id. at 940.

The first principle simply requires the sentencing court "to measure the defendant's role against the relevant conduct for which she has been held accountable." Id. A mitigating role adjustment may not be determined with reference to some larger conspiracy, whether charged or not, but must be confined to the relevant conduct for which the defendant has been held responsible. Id. at 942. In this context, the amount of drugs involved in the relevant conduct "is a material consideration in assessing a defendant's role in her relevant conduct." Id.

The second guiding principle espoused in De Varon "is that the district court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct." Id. at 944. This, again, is a "fact-intensive inquiry," as the sentencing court must weigh the defendant's conduct against the conduct of other identifiable participants in the relevant conduct attributed to the defendant. Id. If the court determines that the defendant was less culpable than most other participants in the relevant conduct, a downward adjustment is warranted. Id.

3

In the context of a drug courier, as in this case, the Eleventh Circuit offers some guidance as to what factual considerations are relevant. These factors include "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." Id. at 945. This list is meant to be illustrative, not exhaustive. "In the final analysis, this decision falls within the sound discretion of the trial court." Id.

The factors identified in De Varon weigh in Ms. Szabo's favor in this case. The relevant conduct in this case is 966.2 grams of cocaine. While this is not a small amount, it is a fairly routine quantity for a body carry drug smuggler in this District. Ms. Szabo's role with respect to that relevant conduct was minor compared to at least two other identifiable individuals. "Phil" initially recruited Ms. Szabo and convinced her to travel to Jamaica with promises of a free vacation. According to Ms. Szabo's post-arrest statement, Phil promised her he would "treat me like a queen . . . wine and dine me, take me shopping, give me a bubble bath, treat me real good." (See attached Exhibit A). Ms. Szabo was then taken to the Miami airport by another man, Ripton Reid, who paid for her ticket and flew to Jamaica with her. (Id.) Once in Jamaica, she was given the cocaine by Phil and, when she balked at the idea, was pressured into going through with the importation. (Id.) While Ms. Szabo was not clear on what was supposed to happen if she had made it through, presumably she would have been met by Reid, who would have been responsible for further distribution. Ms. Szabo was to play no further role in this smuggling venture. Thus, on the whole, the known facts support a mitigating role adjustment for Ms. Szabo with respect to the relevant conduct attributable to her.

Mitigating role adjustments have been awarded to a variety of individuals with significant,

4

active participation in drug offenses. See, e.g., United States v. Vega-Encarnacion, 914 F.2d 20, 23, 25 (1st Cir. 1990), *cert. denied sub nom*, Cruz-Rosario v. United States, 499 U.S. 977 (1991) (defendant solicited drug buyer and threatened to kill an individual who appeared to be a police officer, but was still granted minor role); United States v. Hagan, 913 F.2d 1278, 1283 (7th Cir. 1990) (defendant lived on the farm where 60,000 marijuana plants were cultivated, weeded the plants, and had knowledge of the plants' nature still a minor participant); United States v. Garvey, 905 F.2d 1144, 1146 (8th Cir. 1990) (minor participant status for a defendant who sold 9.13 kilograms of hashish oil and had prior drug activity); United States v. Davis, 878 F.2d 1299, 1300 (11th Cir.), *cert. denied*, 493 U.S. 941 (1989) (defendant's full "understanding of the scope and nature of the enterprise" made her role minor rather than minimal in the possession of over 500 grams of cocaine); United States v. Paulino, 873 F.2d 23 (2d Cir. 1989) (defendant found to be minimal participant where he admitted that he had served as a lookout for a cocaine distribution operation and pled guilty to possession with intent to distribute cocaine); United States v. Sailes, 872 F.2d 735 (6th Cir. 1989) (defendant who allowed her adult son to use her home as a base for his illegal cocaine dealing operation and assisted him in this business awarded a four-point reduction); United States v. Hallam, 723 F.Supp. 66 (N.D.Ind. 1989)(defendant who permitted a relative to store six kilograms of cocaine in his home and allowed similar storage at a neighbor's home received a four point reduction for minimal participation).

If not a minimal participant, Ms. Szabo surely played no more than a minor role in this offense. The Sentencing Commission intended that the "minor participant" role apply to "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n. 3). Ms. Szabo was certainly less culpable than the

5

other participants in this offense. She had no ownership interest. She had no role in distribution. She had no role in planning. She had no significant knowledge and no decision making authority whatsoever. She was a mule.

For all the above reasons, Kathleen Szabo asks the Court to grant a four level downward adjustment of her offense level to reflect her minimal role in the offense. In the alternative, Defendant requests a three level adjustment to reflect a role that was in between minimal and minor. As a third alternative, Defendant asks for a two level adjustment as a minor participant.

**II. DOWNWARD DEPARTURE.**

Section 5K2.13 of the Sentencing Guidelines provides for a downward departure "if the defendant committed the offense while suffering from a significantly reduced mental capacity," as long as the diminished capacity did not result from drug use, and neither the offense nor the defendant's history indicate a need for incarceration to protect the public. U.S.S.G. Section 5K2.13. It is clear from the PSI, the plea colloquy, and the attached psychological evaluation reports that Ms. Szabo suffers from diminished mental capacity warranting a downward departure. (See attached Exhibits B and C).

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: _____

Patrick M. Hunt
Asst. Federal Public Defender
Florida Bar No. 571962
Attorney for Defendant
101 NE 3rd Avenue, Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436 / (Fax) 356-7556

6

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the aforementioned motion was mailed on this 12th day of January, 2001, to Assistant United States Attorney Tom Lanigan at 299 E. Broward Blvd. Fort Lauderdale, Florida and United States Probation Officer Maria Monge at 300 N.E. 1st Avenue, # 315, Miami, FL 33132.

*Patrick M. Hunt* (signature)

Patrick M. Hunt

**Affidavit** *Kathleen Szabo*

| United States of America | ) ss | **EXHIBIT A** |
| ---: | :---: | :---: |
| , District of | ) | |

J0008

1. I, Kathleen Szabo, _____, state that:
2. I reside at Cape Coral, Fl. about 3-4 months ago, -
3. met this black guy (Phil) who wanted to take me t
4. jamaica and treat me like a queen, he was to wine
5. dine me, take me shopping, give me a bubble bath, tr
6. me real good, he kept telling me, he's going to buy merc
7. ise + come back and sell it in a store, So I go
8. jamaica, I'm taken to miami Airport by Ripton Read,
9. Rip gave me money to by ticket, we Fly together to
10. montigo bay on Sat, 10th June, phil picks us up by
11. takes us to a house where a Jamaican Family li
12. I stay there the whole time, on Sun June 15th
13. Phil comes to me and tells me he wants me to car
14. these packages on me, I tell phill I want to th.
15. about it, then on monday he brings in three pkgs a
16. puts me under pressure and slaps one pkg betwe
17. my begs, and tells me put the other in my bra
18. then he said I've got to hurry cause there was a
19. cap waiting and I'm going to be late for the plane,
20. I did not want to do this, I want to stop,
21. and throw the stuff away, I wish I could hav
22. got out of the perdicament I got in, I flew t
23. Fort lauderdale by myself, phili said, Rip would pie
24. me up, Phill said Rip would pay me for bring th.
25. pakages, I'm sorry I did it! and I will never do
26. agin! I was facing extreme hardship, + near homele
27. I couldn't barely pay my bill, I was under a lot of pressur

1  at a very vulnerable point in my life, I'm going
2  through, it seems, more than one major life change
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

I have read the foregoing statement consisting of __2__ pages, each of which I have signed. I fully understand this statement and it is true, accurate and complete to the best of my knowledge and belief. I made the corrections shown and placed my initials opposite each.

I made this statement freely and voluntarily without any threats or rewards, or promises of reward having been made to me in return for it.

Kathleen Smalco
(Signature of affiant)

Subscribed and sworn to before me this _____ day of _____, 19____,
at _____

_____
(Signature)

_____
(Title)

_____ (USCG/3917)

_____
(Signature of witness, if any)

## Michael P. Brannon, Psy.D.
Licensed Psychologist

Office (954) 316-8757
Fax (954) 316-4844

7330 N.W. 5th St.
Plantation, Fl. 33317

09-27-00

Mr. Patrick Hunt                                    EXHIBIT B
Federal Courthouse of Broward County
Office of the Federal Public Defender
101 N.E. 3rd. Ave. #202
Fort Lauderdale, Fl. 33301-1100

Re:      Ms. Kathleen Szabo
Case #:  00-6186-CR-WDF

Dear Mr. Hunt:

At your request, I evaluated the above-referenced defendant on 08-14-00 at the Federal Prison in Miami. The purpose of this assessment was to assess her mental health condition as it may have applied to her legal status at the time of the alleged offense (diminished capacity). She was arrested on 06-19-00 on allegations of her smuggling cocaine into the United States from Jamaica. She has been detained since that time and she is scheduled for her next court proceedings on 10-02-00. In order to conduct this evaluation the following sources of forensic information were utilized: Clinical Interview, Mental Status Examination, Minnesota Multiphasic Personality Inventory - Second Edition (MMPI-2), conversations with defendant's attorney (Mr. Patrick Hunt), telephone conversation with Dr. John Nasse (08-24-00), defendant's written statement at the time of her arrest, and a review of extensive writings by the defendant to her attorney (provided by Mr. Hunt). Attempts were also made to contact Dr. McCray of the Federal Prison, however these attempts were unsuccessful at the time of this report.

The defendant was interviewed in the psychiatric unit of the Federal Prison in Miami. She was reported by correctional officers to be unable to meet this examiner in the open area due to her mental instability. As a result, she was interviewed in a small room through a glass window on the psychiatric unit. Ms. Szabo arrived for this assessment in a disheveled manner and her personal hygiene appeared to be poor. Her hair was uncombed and her prison-issued uniform was wrinkled and ill-fitting. She did not appear to have bathed for several days. Ms. Szabo was of short stature and stocky build and she appeared to be her stated age of 35. She appeared to be quite agitated and hyperactive and he experienced difficulty remaining seated during this assessment. Her initial presentation was one of cooperation, however she became easily frustrated and distracted. She was oriented to time, place, person and situation, however she appeared to be confused and bewildered throughout the assessment. Thought processes were

disorganized and frequently irrelevant. Speech patterns were pressurized, rambling and tangential. Affect was both tearful and cheerful in rapid succession and her mood was erratic and not situationally congruent. Functional intelligence was estimated to be in the Average range based upon her use of vocabulary and general fund of knowledge. The defendant denied recent suicidal or homicidal ideations, however her impulse control was noted to be quite poor at this time. Recent and remote memory functions were unable to be assessed due to her impaired mental condition. Attention span was not within normal limits as the defendant was easily distracted by extraneous stimuli. The defendant reported both auditory and visual hallucinations in the recent past and she may have been attending to imaginary, internal stimuli at the time of this assessment. In addition, she appeared to be suffering from an active delusional belief system (fixed and irrational distortions of reality) consisting of both persecutory and somatic themes. Ms. Szabo was not lucid, rational or goal-directed during this assessment and she appeared to be suffering from the active symptoms of a major mental disorder. The defendant poor insight into her mental illness as well as her need for ongoing psychiatric treatment.

The following historical information was obtained from the defendant only and is therefore uncorroborated and subject to distortions. The defendant is a 35 year-old, divorced, white female who was born in Montana. She was mostly raised by her father as her biological parents divorced when she was age 7. She further reported that she was sexually abused by neighbors and "friends of my father" on several occasions during her formative years. Ms. Szabo stated that her mother suffered from alcoholism and her brother was diagnosed with Schizophrenia. The defendant has been married and divorced on one occasion, however she denied that she is the mother of any children. Academically, the defendant reported that she completed the 11th grade in special education (LD) classes. She reported that she experienced considerable problems in the school setting due to "hyperactivity" and "family problems." Occupationally, the defendant reported that she has "never held a job for more than 8 days." She was last employed at a bingo hall in the late 1990's. She has also received Social Security benefits for a mental disability for the past several years. The defendant indicated that she has been arrested in the past on charges including Breaking and Entering, Violation of Probation and various traffic offenses. She denied that she has ever been incarcerated in prison prior to the current charges. In regards to her mental health history, the defendant denied that she has ever been psychiatrically hospitalized. Conversely, she has received extensive outpatient, psychiatric services from Dr. Nasse in California for the past several years. During that period she has been diagnosed with Schizoaffective Disorder and prescribed numerous medications including Lithium (mood-stabilizer), Trilafon (anti-psychotic) and Paxil (anti-depressant). At the time of this assessment, the defendant was refusing all psychotropic medications due to her concerns over lethal side effects. Ms. Szabo reported symptoms that are consistent with both depression and mania at the present time and in the period immediately prior to her current incarceration. She also acknowledged thoughts of self-harm in the past as well as the occurrence of both auditory and visual hallucinations. The defendant indicated that she abused illicit substances in the past, however she denied the use of any form of drug or alcohol in the past 10 years. Medical health was reported to be poor due to a variety of vague somatic complaints.

During the clinical interview with the defendant, she reported that she feared that prison deputies were attempting to kill her because of her alleged offense. In addition, she complained of "not being able to digest my food because I am dying inside." Furthermore, Ms. Szabo claimed that she was "sexually harassed by an officer in this place" and she stated that "they have put me into a cell with rats and cockroaches running around inside." The defendant complained of ongoing sleep difficulties as she had not slept in several nights according to her self-report. The defendant reported that she is refusing all psychotropic medications due to "the effect that it has on my liver, kidneys and gall bladder." Moreover, she reported that "the foods that I get in here have fertilizer and additives in them and I think that they have given me cancer." Ms. Szabo spoke in a rapid and distressed manner covering numerous unrelated topics in brief intervals of time. Her responses to examiner inquiries were frequently irrelevant and irrational and she did not appear to be aware of her communication difficulties. It should be noted that in order to shorten the length of the defendant's responses (sometimes ranging up to 15 uninterrupted minutes) it was necessary on more than one occasion for this examiner to stand up, place his hand up in front of the defendant and loudly state "Okay, stop, that is enough for now." Based upon the defendant's clinical presentation noted above, it is my opinion that she was suffering from a manic episode at the time of this assessment.

Psychological testing with the MMPI-2 indicated that the defendant responded in an honest and straight-forward manner based upon the test validity scales. In addition, the clinical scales revealed significant elevations on Scale 8 (Schizophrenia), Scale 9 (Mania) and Scale 6 (Paranoia). These elevations are suggestive of an individual who displays uncontrollable levels of energy, poor impulse control, low frustration tolerance and severe variations in mood. In addition, she may experience unusual thoughts and perceptions and actively distort reality at times. Ms. Szabo endorsed numerous bizarre beliefs in her test protocol and she may have been actively psychotic at the time of this testing. Finally, the defendant scored in a manner that is consistent with individuals who are highly suspicious, mistrustful and overly-concerned with possible slights by others. At times, these suspicions are likely to be by-products of her significant distortions of reality in regards to the intentions of others. It should also be noted that test scales designed to measure substance abuse or potential for such abuse were elevated in the current protocol. This finding may be reflective of current usage patterns or previous abuse patterns as reported by the defendant.

Diagnostically, the defendant appears to meet the clinical criteria for a Schizoaffective Disorder. This is a major mental disorder that involves significant disturbances in both cognitive and emotional functioning. In addition, the defendant may be suffering from an unspecified substance abuse disorder, however this possible condition is not definitive and needs further clarification in future evaluations. Ms. Szabo may also be suffering from a Borderline Personality Disorder, which is a long-term, severe disturbance of personality. This possible characterological style usually involves mood lability, constant relationship disruptions and impulsive actions towards self and others.

In a telephone interview with Dr. John Nasse (psychiatrist - California), he reported that he has treated the defendant for the past 7 years on an outpatient basis. He further reported that he has diagnosed the defendant as suffering from a Schizoaffective

Disorder and that he has prescribed a variety of anti-psychotic, mood-stabilizing and anti-depressant medications in the past. Dr. Nasse also indicated that the defendant is "improved" when complying with her prescribed medications, however she remains symptomatic at all times. These symptoms usually consist of disturbances in mood, paranoia and vague somatic complaints. Dr. Nasse indicated that prognosis for a successful treatment outcome is improved but still guarded with the prescription of psychotropic medications.

A review of the defendant's written correspondence since she has been in prison revealed a consistent pattern of tangential and circumstantial thinking. She expresses ongoing concerns over her physical health, others intentions towards her and the side effects of psychotropic medications. These voluminous written notes also contain apparent examples of both psychotic thinking (hallucinations and delusions) and drastic shifts in emotion over brief intervals of time.

In regards to the current legal offense, the defendant provided a narrative that included her fears of the "Mafia" and the promise of a "million dollar lifestyle with bubble baths every day." She was notably upset by "violations of what I was told by Phil, like living in a mansion and meeting all the stars and flying on a Lear jet." Ms. Szabo reported that she had stopped taking her prescribed psychotropic medications at that time "because they were killing me inside." She further indicated that "I couldn't eat for 6 days because my body shut down and they were trying to starve me there." The defendant also reported that she was raped on several occasions while in Jamaica. Although she was able to remember specific details of her actions during the time period of her alleged offense, the defendant was not able to clarify or elaborate upon her responses at the request of this examiner. A review of the defendant's statement to custom officials at the time of her arrest displayed similar indications of an impaired mental process in regards to her reasoning, judgment and impulse control.

Although a formal competency assessment was not requested as part of the present evaluation, it is my opinion that the defendant is currently suffering from a major mental disorder that would significantly interfere in her current legal capacities (competency to proceed to stand trial). The defendant is able to state the current charge against her and the possible penalties that may be imposed upon her if she were to be found guilty of that charge. Although she is able to state factual definitions of key courtroom personnel (judge, prosecutor, defense attorney, witnesses), her rampant paranoia interferes in her ability to rationally appreciate the adversary process. Ms. Szabo is able to state the basic plea options available to her in a criminal proceeding, however she displayed considerable difficulties in applying those concepts to her current legal situation. The defendant displayed significant communication difficulties in that she spoke in a rambling and irrational manner with little regard for the specifics of the inquiry proceeding her responses. Moreover, she displayed ongoing problems in the area of fully comprehending examiner inquiries, likely due to her impaired attentional abilities. As a result, it is unlikely that she would be able to follow the nuances of an extended criminal proceeding. She was able to provide some specific details of her actions on the date of the alleged offense, however she was not able to consistently respond to requests for clarification or elaboration of her narrative. Therefore, it is unlikely that she would be able to provide assistance to her attorney in developing a viable defense strategy. Ms.

Szabo was highly emotional and agitated throughout this assessment and she was not able to sufficiently calm herself at any time. She was able to state the appropriate courtroom behaviors, however it is unlikely that she would be able to conform her actions to those accepted standards in her current mental state. The defendant appeared to be suffering from the active symptoms of a major mental disorder with resulting interferences in both her cognitive and emotional functioning. As a result, she would not be able to provide direct testimony or to participate in a rational cross-examination procedure. Based upon the above forensic information, it is my advisory opinion to the trier of facts that the defendant was Not Competent to Proceed to Stand Trial at the time of this evaluation. (Since the publication of this report, Mr. Patrick Hunt informed this examiner that the defendant agreed to the prescription of psychotropic medications and that she had been relocated back to general population).

In regards to the issue of diminished capacity, it is my opinion that the defendant was likely suffering from a major mental disorder at the time of the alleged offense. Based upon her current clinical presentation, self-report of her mental status at that time, a review of her statement to custom officials at that time, an interview with Dr. Nasse and her refusal to comply with prescribed psychotropic medications, it appears that "...the defendant committed the offense while suffering from a significantly reduced mental capacity." Although she was likely able to "...understand the wrongfulness of the behavior comprising the offense", she was unlikely to have been able to "...control the behavior that the defendant knows is wrongful." It should be noted that the symptoms of a manic disorder (such as in Schizoaffective Disorder) usually results in poor impulse control, impaired judgment, uncontrollable energy and heightened suggestibility. These factors all appeared to have been present in some form or another at the time of the alleged offense.

Thank-you for the opportunity to evaluate this interesting individual and please feel free to telephone me if you require additional information.

Truly yours,

Michael P. Brannon, Psy.D.
Licensed Psychologist
PY0004289

## Michael P. Brannon, Psy.D.
Licensed Psychologist

Office (954) 316-8757  
Fax (954) 316-4844

7330 N.W. 5th St.  
Plantation, Fl. 33317

10-08-00

Mr. Patrick Hunt  
Federal Courthouse of Broward County  
Office of the Federal Public Defender  
101 N.E. 3rd. Ave. #202  
Fort Lauderdale, Fl. 33301-1100

EXHIBIT C

Re:      Ms. Kathleen Szabo  
Case #:  00-6186-CR-WDF

Dear Mr. Hunt:

At your request, I re-evaluated the above-referenced defendant on 10-05-00 at the Federal Detention Center in Miami. Ms. Szabo was previously interviewed by this examiner on 08-24-00 for the purpose of providing information concerning her mental condition as it might have related to her legal status (diminished capacity) at the time of the alleged offense. At the time of that prior evaluation, this examiner expressed concern over the possibility that the defendant may not be competent to proceed to stand trial due to the presence of an active mental illness. Ms. Szabo was refusing treatment in the form of the prescription of psychotropic medication at the time of that prior evaluation. The defendant was arrested on 06-19-00 on allegations of her smuggling cocaine into the United States from Jamaica.

In order to conduct this evaluation the following sources of forensic information were utilized: Clinical Interview, Mental Status Examination, Competency Interview, conversations with defendant's attorney (Mr. Patrick Hunt) Attempts were again made to contact Dr. McCray of the Federal Prison, however these attempts were unsuccessful at the time of this report.

The defendant was assessed in the general interview area at the Federal Prison in Miami. It should be noted that the previous interview was conducted in a small room through a glass window on the psychiatric unit. Ms. Szabo arrived for this assessment in an appropriately groomed manner and her personal hygiene appeared to be adequate. Ms. Szabo was of short stature and stocky build and she appeared to be her stated age of 35. Her initial presentation was one of cooperation and she maintained that demeanor throughout the assessment. She was oriented to time, place, person and situation, and she did not appear to be confused or bewildered during the assessment. Thought processes were somewhat disorganized but consistently relevant. Speech patterns were appropriate in volume and content, rapid in pacing and excessive in word production. She did not display any signs of pressurized or rambling speech. Affect was well-modulated

(especially when compared to the prior evaluation of 08-24-00) and mood appeared to be cheerful. Functional intelligence was estimated to be in the Average range based upon her use of vocabulary and general fund of knowledge. The defendant denied recent suicidal or homicidal ideations and her impulse control appears to be significantly improved. Recent and remote memory functions were intact on brief measures of those cognitive skills. Attention and concentration skills were mildly impaired as she was occasionally distracted by extraneous stimuli. The defendant reported both auditory and visual hallucinations in the recent past, however she did not appear to be attending to imaginary, internal stimuli at the time of this assessment. In addition, she did not appear to be suffering from an active delusional belief system (fixed and irrational distortions of reality). Ms. Szabo was lucid, mostly rational and somewhat goal-directed during this assessment. The defendant displayed superficial insight into her mental illness as well as her need for ongoing psychiatric treatment.

In regards to the issues of competency to proceed to stand trial, the defendant was able to state the current charges against her as "Carrying drugs into the country is what they charged me with." She was also able to discriminate between a felony and a misdemeanor as well as the severity of her current charges. When asked about the possible penalties that may be imposed upon her if she were to be found guilty of the current charges, the defendant stated "I could go to prison for 27-37 months." In addition, she was able to state the appropriate parameters of her possible legal sanctions as she recognized "life in prison" as too extreme of a sentence for her current charges. The defendant was able to state the roles of the judge, prosecutor, defense attorney and witnesses and she was not easily confused as to their functions. She was also able to state the basic plea options available to her in a criminal proceeding and the manner in which those pleas may apply to her current legal situation. The defendant did not display significant communication difficulties, however her speech remains tangential at times. Despite the tendency to provide excessive information at times, the defendant was able to limit her responses when requested by this examiner. She appeared to comprehend all assessment inquiries and she responded in a rational and mostly relevant manner. The defendant was able to provide specific details of her actions on the date of the alleged offense and she was able to respond to inquiries concerning her behavior at that time. Ms. Szabo remains emotionally fragile in her clinical presentation as she cries easily and is quite anxious at other times. However, she was able to sufficiently calm herself when required and she did not display any unusual or disruptive behaviors. She was able to state the appropriate courtroom behaviors and the possible consequences of violating those accepted standards. The defendant continues to suffer from the residual symptoms of a major mental disorder, likely Schizoaffective Disorder. However, she has recently agreed to comply with her prescribed schedule of psychotropic medications and that treatment appears to have significantly reduced her active psychiatric symptoms. Ms. Szabo was not easily influenced into altering her narrative and she was able to correct purposeful misstatements by this examiner. It should be noted that the defendant's current improvements in her mental functioning are due to and contingent upon her ongoing compliance with her prescribed schedule of psychotropic medications.

Based upon the above forensic findings, it is my opinion that the defendant is able to appreciate the current charges against her and the possible penalties that may be

imposed upon her if she were to be found guilty of those charges. In addition, she is able to understand the adversary nature of the legal process and she would be able to assist her attorney in developing a viable defense strategy. Finally, she would be able to maintain the appropriate courtroom behavior and she would be able to testify relevantly. As a result, it is my opinion that the defendant is Competent to Proceed to Stand Trial at this time. Conversely, the defendant's mental condition remains quite mercurial and may be subject to change in the foreseeable future based upon her prior erratic medication compliance. In addition, the defendant's psychiatrist for the past 7 years (Dr. John Nasse) reported that the defendant's mental condition does not fully stabilize on medications and that the appearance of her symptoms may fluctuate despite her compliance with those medications. As a result, the defendant's competency should be re-evaluated if defense counsel or the court becomes concerned over her actions (or lack thereof) during future legal proceedings.

Thank-you for the opportunity to evaluate this interesting individual and please feel free to telephone me if you require additional information.

Truly yours,

*Michael P. Brannon*

Michael P. Brannon, Psy.D.
Licensed Psychologist
PY0004289